UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILSON TITUS | No. 13 CR 761<br><br>Judge Charles R. Norgle |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES of AMERICA by its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, asks this Court to sentence defendant Titus to at least 41 months' imprisonment and order him to pay restitution in the amount of $2,119,061. Such a sentence is sufficient but not greater than necessary for all of the reasons set forth in this sentencing memorandum.

**I.   Updated Presentence Investigation Report**

The government previously outlined defendant's participation in this mortgage fraud scheme in its initial Sentencing Memorandum. Dkt. # 184. Since defendant's initial sentencing, however, the government has updated the loss chart for those properties attributed to defendant; that chart is summarized in and attached to the Updated Presentence Investigation Report ("UPSR"). Based on the updated figures, the estimated loss amount (based on assessed value of the relevant properties) is $2,119,061. Additionally, there is a $332,500 intended loss related to an attempted mortgage loan that was not processed; defendant was present at the closing for that loan and was confronted by agents at that time. As Application Note 3(A)(i) to Guideline § 2B.1. makes clear, "loss is the greater of actual loss or intended loss."

Therefore, because the intended loss for the South Hoyne property (the closing for which was disrupted by federal agents) is properly included in defendant's loss amount calculation, the total loss amount for Titus is $2,451,561. UPSR at 4.

The change in the loss amount leads to a smaller offense level enhancement than what was contemplated in the Government's Version of the Offense and the original Presentence Investigation Report ("PSR"). Here, the base offense level of 7 is increased 16 (rather than 18) levels because the loss amount was more than $1,000,000 and less than $3,500,000. *See* Guideline §§ 2B1.1(a)(1)(A) and (b)(1)(I). Additionally, despite defendant's involvement in ten or more fraudulent mortgage loans, the enhancement for more than 10 victims should not be applied because several of the mortgage loans involve the same lender.

As a result, the offense level in the UPSR is 22 (in contrast with the offense level of 26 determined at Titus' initial sentencing). With a criminal history category of I, defendant's guideline range is 41 to 51 months.

II. **The Factors Set Forth in 18 U.S.C. § 3553(a) Support a Sentence of 41 Months' Imprisonment**

Though the applicable guideline range has changed, defendant's conduct and role in this long term fraud scheme has not. Titus worked over the course of years with co-defendant Keith Austin to secure numerous fraudulent mortgage loans. In doing so, Titus and Austin reeled in unsuspecting would-be buyers and destroyed those people's credit. They used fraudulent documents and even identities to support the loans. Titus even misrepresented himself as an attorney in order to shepherd

2

along a loan. While Titus only received a small portion of the proceeds, he did this for his own personal gain with little concern about the people who were deceived and harmed, or the communities now blighted by the foreclosed homes left in his wake. The victims of his fraud included people long term friends and acquaintances who trusted him. His conduct warrants a significant term of imprisonment.

Similarly, there is nothing in the defendant's personal characteristics that serves as a mitigating factor, with the potential exception of his age. Still, defendant was in his late 50s and early 60s when he committed the offense conduct, which undermines a potential argument about a lower potential for recidivism as defendant ages. In the absence of personal characteristics that would somehow explain his decision to engage in years and years of fraud, a guideline range sentence is appropriate.

Finally, a guideline range sentence is necessary to reflect the seriousness of the offense, provide specific and general deterrence, promote respect for the law, and provide just punishment. While specific deterrence is important here for an individual who engaged in fraud over an extended period of time, there is also a need to provide general deterrence to those who would become involved in financial frauds. A guideline range sentences sends a clear signal that this kind of fraud, which hurts not just large financial institutions but unsophisticated lay members of the community, will not be tolerated.

### III. The Supervised Release Conditions Outlined in the PSR Should Be Adopted

As noted in the UPSR, defendant is subject to a term of supervised release of not more than 5 years. UPSR at 6. The UPSR discusses the imposition of various mandatory, discretionary and special conditions of supervised release. For the reasons outlined below, the following conditions should be imposed as terms of defendant's supervised release.

#### A. Mandatory conditions

Three of the six mandatory conditions are recommended for defendant during the period of supervised release. The conditions require that defendant: not commit another Federal, State, or local crime; not unlawfully possess a controlled substance; and cooperate in the collection of a DNA sample if the collection of such a sample is required by law. Prohibiting defendant from committing additional criminal offenses, including the unlawful possession of a controlled substance, and protecting the larger community from such offenses is the goal of supervised release.

The three mandatory conditions that the UPSR does not recommend would require defendant to attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court (which is to be used for domestic violence crimes), to register and comply with all requirements of the Sex Offender Registration and Notification Act, and to refrain from the use of controlled substances and submit to periodic drug testing. Nothing in the original PSR, UPSR,

4

or defendant's personal history indicates that these conditions are needed or appropriate for this defendant.

### B. Discretionary Conditions

The UPSR also recommends the imposition of 9 of the 23 discretionary conditions (one of which is to satisfy the special conditions discussed in Section IV.C).

The first condition requires defendant to make restitution to victims of the offense under § 3556 (but not subject to the limitation of § 3663(a) or § 3663A(c)(1)(A)). As defendant faces a restitution amount of more than $1.9mm, this condition is warranted by the facts of this case.

Several of the discretionary conditions will serve to ensure the ongoing safety of the community while preventing future offenses by defendant. Specifically, the second discretionary condition requires defendant to refrain from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense – in this case, banking or loan processing – or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances. Considering defendant's ongoing involvement in a mortgage fraud scheme that defrauded a number of financial institutions, this condition is appropriate.

The UPSR also recommends a condition requiring defendant to refrain from possessing a firearm, destructive device, or other dangerous weapon. This condition

helps to promote respect for the law and simultaneously deter defendant from committing future crimes.

Finally, the discretionary conditions require defendant to maintain contact with the probation officer to whom he is assigned. Specifically, the recommended conditions require defendant: (1) to remain within the jurisdiction where the defendant is being supervised, unless granted permission to leave by the court or a probation officer; (2) to report to a probation officer as directed by the court or a probation officer; (3) to permit a probation officer to visit the defendant at any reasonable time at home, work, or other reasonable location, and to permit confiscation of any contraband observed in plain view of the probation officer; (4) to notify a probation officer promptly, within 72 hours, of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer; and (5) to notify a probation officer promptly, within 72 hours, if arrested or questioned by a law enforcement officer. Each of these conditions is appropriate considering the nature of defendant's offense, and the aims of supervision – namely, to help defendant avoid reoffending and to ensure defendant's access to whatever assistance may be needed to help defendant successfully reenter the community after a term of imprisonment. These conditions will hopefully allow defendant to succeed while on supervised release, while also ensuring that his probation officer stays apprised of his conduct and can move to

adjust conditions as needed for defendant's well-being and the safety of the community.

### C. Special Conditions

Finally, the Supplemental Report recommends 4 special conditions. First, the report recommends that if defendant is unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, he be required perform at least 20 hours of community service per week (up to a maximum of 300 hours). This condition would help ensure that defendant stays occupied and a productive member of society if he is out of work.

Next, the report also recommends that defendant: (1) not maintain employment where he has access to others' personal including, including Social Security number or credit card numbers, unless approved by his probation officer; (2) provide his probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release; and (3) pay any financial penalty that is imposed by this judgment that remains unpaid at the commencement of the term of supervised release (at an amount that is at least 10% of his net monthly income, defined as income net of reasonable expenses). These conditions also help to ensure that defendant will be able to make his restitution payments and keep his probation officer apprised of any changes that may impact his ability to do so.

Taken together, the mandatory, discretionary, and special conditions of supervised release described above should accomplish the aims of § 3553(a), particularly to promote respect for the law, provide specific and general deterrence, and protect the public from potential crimes by defendant.

## IV. Conclusion

The government respectfully requests that the Court sentence Titus to at least 41 months' imprisonment and order him to pay $2,119,061 in restitution.

                                  Respectfully submitted,

                                  ZACHARY T. FARDON
                                  United States Attorney

                        By: /s/ *Yasmin N. Best*
                                YASMIN N. BEST
                                Assistant United States Attorney
                                219 South Dearborn Street
                                Chicago, Illinois 60604

Dated: January 27, 2017                (312) 469-6024